JOYNJ3S, J.
It was contended by the counsel for the plaintiff .in error, -that no rent was due to the defendants in error at the time they sued out their warrant of distress, which is a ground of defence allowed in such a case by section 4, chapter 189 of the Code. And, in the first place, it was contended, that the ground rent had been extinguished before the sale bj' the United States tax commissioners, by reason of the title to the rent and the title to the land on which it was charged having been united in the same. To maintain this it was insisted: 1. That *it must be presumed that Moore, when he took possession of the land after the death of Hannon, in 1821, did so by virtue, of the right conferred upon him by the deed granting the rent, in case the rent should at any time remain unpaid for thirty days, and no sufficient distress to satisfy the same could be found on the land, to enter on the land and hold the same as his absolute estate ; and 2. That if it cannot be presumed that Moore entered upon and held the land under this clause of the deed, the defendants in error and those under whom they claim, had, at the time of the tax sale, held the land in adverse possession for forty-three years, and had thereby acquired a valid title thereto. •
But neither of these positions can be maintained. The case comes up on a special verdict. The verdict does not find such an entry by Moore, nor does it find an adverse possession by him or by any other person under whom the defendant in error claims, nor any facts from which such an entry or such a possession results as a conclusion of law. The court, therefore, cannot infer either fact. Nor, indeed, would the facts found warrant us in holding that there was such an entry by Moore, or such an adverse possession, if we were at liberty to make inferences on the subject. The' control which Moore assumed over the land after Hannon’s death seems to have been taken in order to secure the annual payments due him on accouijt of the ground rent. The lease which he made of the land is consistent with that object. The Irwins entered and held possession under a deed conveying to them the ground rent only. They . exercised no act of ownership over the land except to occupy it and pay the taxes, as Moore had done, and with the same object. They asserted no adverse claim to it. When they conveyed the ground rent to the defendants in error, they added a clause purporting to convey also “all their right, title and inter-ést” *in the land “derived from any source whatever.” But this clause passed nothing. Whatever may have been the intention with which that clause was inserted, it could not have been understood by either'the grantors or grantees as passing an interest in the land- which the grantors neither had nor claimed. It furnished no color of title to the defendants in error.
But it is contended further, that if the ground rent had not been extinguished in the manner contended for before the tax sale, it was extinguished by that sale. It is claimed that this results from the provision of the fourth section of the act of June 7, 1862, (12 Stat. at Large 423,) which is ' in these words: “The title of, in and to each and every piece or parcel of land upon which the tax has not been paid, as above provided, shall thereupon become forfeited to the United States, and upon the sale hereinafter provided for, shall vest in the United States, or in the purchaser at such sale, in fee simple, free and discharged from all prior liens, encumbrances, right, title and claim whatsoever.” It is contended, that the effect of this provision is, that the purchaser shall not take merely the title of the owner to whom the land was charged, or by whom othe tax was payable, free and discharged from all encumbrances, &c., but shall take a new, independent and absolute title, and that the sale consequently extinguished the ground rent, the continued existence of which would be inconsistent with such an absolute and perfect title as the act designed to confer upon the purchaser.
Several answers have been made to this argument:'1. That the act of Congress under which the sale was made is unconstitutional and void. 2. That the tax commissioners, in making the sale in the present case, exceeded the authority conferred by the act, so that the sale was void. 3. That whatever may be the operation of the tax sale upon the title to the land itself, 83S it had no effect upon *the title to the ground rent, which was a separate and distinct estate; in support of which the case of Irwin v. Bank of United States, 1 Barr. R. 349, was cited.
I do not think it necessary to consider the first or last of these positions, as I think the second is well taken.
The sale is claimed to be void, because, as appears on the face of the certificate.of sale, the land was sold for less than two-thirds of its assessed .value. The seventh section of the act of June 7, 1862, as amended by the act of February 6, 1863, provides that the several lots and parcels of land upon which the taxes shall not be paid, shall be advertised for sale by the commissioners, and shall be severally sold to the highest bidder, for a sum not less than the taxes, penalty and costs, and ten per cent, per annum interest on said tax; and then adds: “In all cases where the owner of said lots or parcels of ground shall not, on or before the day of sale, appear before the said board of commissioners and pay the amount of said tax, with ten per centum interest thereon, with the cost of advertising the same, or request the same *837 to be struck off to a purchaser for a less sum than two-thirds of the assessed value of said several lots or parcels of ground, the said commissioners shall be authorized at said sale to bid off the same for the United States at a sum not exceeding two-thirds of the assessed value thereof, unless some person shall bid a larger sum; and in that case, the same shall be struck off to the highest bidder,” &c. The provision of the original act, for which the foregoing was substituted by the act of February 6, 1863, was as follows: “And the said commissioners shall, at said sale, strike off the same severally to the United States at that sum, [that is to say, the taxes, penalty and costs, and ten per cent, per annum interest on the tax,] unless some person shall bid the same, or a larger sum. ’ ’
The argument is, that under the act of February 6, *1863, the commissioners were bound to bid off the land for the United States, if no person should bid more for it than two-thirds of its assessed value, and that they had no authority to sell any parcel of land at less than two-thirds of its a ssessed value to any purchaser other than the United States, except in case the owner should request it to be done; which does not appear, and is not alleged in this case.
It is a general principle, applicable to the sale of land for taxes, that the purchaser must show that all the provisions of the law have been fully complied with. “The purchaser setting up a new title in hostilit3 to the former owner is not be favored, and should have looked into it with care before buying, and not expect to disturb or defeat old rights of freehold, without showing a rigid compliance with all the material requisitions of law under which the sale was made.” Mason v. Fearson, 9 Howard U. S. R. 248. The purchaser is “bound to show every fact necessary to give jurisdiction and authority to the officer, and a strict compliance with all things required by the statute.” Parker v. Overman, 18 Howard U. S. R. 137. The grounds of this doctrine are fully stated, and numerous cases in which it has been laid down and acted on collected, in the second and third chapters of Blackwell on Tax Titles. The counsel for the plaintiff in error, however, relies upon the provision of the act of February 6, 1863, which declares, that “the certificate of said commissioners shall only be affected as evidence of the regularity and validity of sale by establishing the fact that the said property was not subject to taxes, or that the taxes had been paid previous to sale, or that the property had been redeemed according to the provisions of this act.” It is insisted, that the effect of this provision is to preclude any enquiry in respect to the regularity of the sale, or in respect to the authority of the commissioners *to make it, upon any other grounds except those specified.
It is not necessary to consider what is the effect of this provision. Numerous cases involving the construction of analogous provisions are collected and discussed by Blackwell in his third chapter. Among the cases there cited is Parker v. Overman, above referred to. The statute provided that the ‘ ‘deed shall be taken and considered by the court as sufficient evidence of the authority under which such sale was made, ’ ’ &c. It was held that “sufficient” was used in the sense of “prima facie.” But whatever may be the effect of this provision in excluding evidence aliunde to impeach the validity of the sale on the ground of want of authority in the commissioners to make it, it can only apply to a case in which the certificate is regular on its face, and shows nothing to impeach the authority of the commissioners. It cannot apply to a case in which the defect of authority is apparent on the face of the certificate. The object of this provision is to exempt the purchaser from the necessity of preserving the evidence that the requirements of the law have been complied with, and to make the certificate evidence of that fact, and conclusive evidence, perhaps, with the exceptions specified. It would be absurd to say that this presumption shall attach to a certificate which shows upon its face that the presumption is contrary to the fact. The object was to afford protection to purchasers who received regular certificates, upon which they have a right to rely. The same considerations did not require that this protection should be afforded to purchasers who take certificates which show upon their face that the sale was made without authority. If the certificate, on its face, shows a prima facie case of sale without authority, the party who relies upon it must establish the existence of anjr other facts, not apparent on the certificate, which may be necessary to show that the ^'authority existed, notwithstanding what appears on the certificate. The existence of such other facts cannot be presumed.
The question then is, whether the certificate of sale in this case shows, on its face, that the sale was made without authority. The words of the act are that the commissioners shall “be authorized” to bid off the land for the United States. laterally construed, this language is permissive, not mandatory. But such expressions are often construed to ’be mandatory, and not merely permissive. And it is a general rule of construction, that where power is conferred upon public officers by statute, in language which literally imports permission or authority merely, the language will be construed as peremptory whenever the power is conferred for the benefit of the public or of individuals. Thus, in Supervisors v. United States, 4 Wallace U. S. R. 435, the words “may, if deemed advisable,” were construed as imposing a positive and absolute duty, and not as devolving a mere discretion. The same rule was acted on by this court in Bean & al. v. Simmons, 9 Gratt. 389. Here the authority was to be exercised for the benefit of the government of the United States, representing the whole public, and the government had a right to claim *838 its exercise as a duty imperative on the commissioners. The authority was conferred for the benefit of the government, not for the benefit of the commissioners. The ninth and eleventh sections of the act of June 7, 1862, provided for the disposition of the lands to be thus acquired by the United States. Congress certainly did not intend to leave it to the commissioners to say what lands they should bid off for the United States, or whether they would bid off any, and thus to enable them to say to what extent the policy of Congress in the ninth and eleventh sections aforesaid should be carried into effect, or to defeat it altogether. It, on the other hand, laid down *a rule by which the commissioners were to be governed, and which they had no right to disregard. That Congress intended to impose a duty upon the commissioners in this case, and 'not merely to invest them with a discretion, appears further from the provision of the act of June 7, 1862, for which that now under consideration was substituted. In that act the language was that the commissioners “shall” strike off the land to the United States, unless some person shall bid a larger sum than that limited by the act. The sum limited by that act was- the minimum sum at which the commissioners were authorized to sell the land, namely, the tax, penalty and costs, and ten per cent, interest on the tax. The amendment consisted in these particulars: 1. A permission to the owner to appear before the commissioners in proper person, and pay the tax, with interest and cost of advertising, by which the authority of the commissioners to make a sale would be defeated. 2. A provision, in effect, that the land might be' sold to any person for less than two-thirds of its assessed value, if the owner should so request; in which case the commissioners could not bid it off for the United States. 3. That if the owner did not so request, the commissioners should bid off the land for the United States at not more than two-thirds its assessed value, unless some person would bid more. Congress still aimed at the acquisition of land at these sales, to fulfill the purposes contemplated by the ninth and eleventh sections aforesaid, but it chose to change the maximum price at which it might be bid off for the United States, for the reason, probably that it had been found by experience that the United States could get no land, or not enough, at the maximum price limited by the original act. But surely Congress did not mean, by the amended act, any more than by the original act, to leave it to the discretion of the commissioners to say whether they would or would not carry out the policy of Congress *by bidding off the land for the United States on the terms specified. It meant, in all cases, to take the land to the United States, if it could be obtained on the terms specified in the act, and to deny authority to the commissioners to sell it to any other purchaser.
Another provision of the act of February 6, 1863, is in these words: “And provided further, that at such sale, any tracts, parcels, or lots of land which may be selected under the direction of the President for government use, for war, military, naval, revenue, charitable, educational, or police purposes, may, at said sale, be bid in by said commissioners, under the direction of the President, for, and struck off to, the United States.” Here again the language used is, literally construed, permissive, but the obvious meaning was that it should be the peremptory duty of the commissioners to bid off for the United States the lands that might be selected. And the commissioners had no authority to defeat the object of the government bjr selling such land to another purchaser. The case is substantially analogous to that which has been considered before; in both cases, the law makes it the duty of the commissioners to bid off the land for the United States, and not to sell it to another; in effect, to reserve it from sale.
I consider the provision in question, therefore, as a limitation on the authority of the commissioners. A sale made to another purchaser, of land which Congress directed to be bid off for the United States, and not to be sold to another, was void for want of authority in the commissioners to make it, and not merely voidable at the election of the United States.
It is no answer to say that no injury is done in such a case to the owner, as it is not material to him whether his land is bid off for the United States, or sold to another purchaser, because, in either case, it would be lost to him. *If the question related to a mere irregularity in the proceedings of the commissioners, not in any way affecting'their authority to make the sale, it might, and probably would, have been incumbent on the owner to show that the irregularity was one which might, by possibility, have done him an injury. But when, as in this case, the objection goes to the authority of the commissioners to make the sale, it is not necessary for the owner to show that he was, or might have been, injured by the sale. When he shows that the commissioners had no authority to make the sale, he shows that the sale was void and of no effect whatever. See Blackwell, second chapter, especially pp. 63, 64. In this case, the certificate shows a sale for less than two-thirds of the assessed value, which was prima facie without authority, and it does not appear that the owner requested the land to be struck off at less than two-thirds of its assessed value, which could alone repel the presumption arising from the face of the certificate.
I am of opinion, therefore, that the judgment of the District Court should be affirmed.
MONCURR, P., concurred in the opinion of Joynes, J.
RIVRS, J., dissented.
Judgment affirmed.